UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. SANGO,

    Plaintiff,

Case No. 1:12-cv-1199

Hon. Robert J. Jonker

vs.

UNKNOWN GRAMBAU,

    Defendant.
                                /

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Ronald Grambau's motion for summary judgment (docket no. 15).

**I.    Background**

The events alleged in this action occurred while plaintiff was incarcerated at the Oaks Correctional Facility (ECF) and defendant Grambau was an Assistant Residential Unit Supervisor (ARUS) at that facility. Compl. at ¶¶ 3-4. Plaintiff set forth the following allegations in his complaint:

> To put this issue into context: Upon arriving at ECF Arus Grambau and an Officer Riggs began to harass Plaintiff , also telling staff that Plaintiff had sued an officer etc. Plaintiff filed a grievance to involve a supervisor hoping they would be more impartial. On 8-16-12, Plaintiff was called to Arus Grambau's office. Arus Grambau, with C/O Riggs present, had the grievances written on them (when policy states these Grievances should have been sent to a supervisor). The Issue at hand: Arus Grambau tells Plaintiff, referring to the grievance in his hand, that when he (Grambau) said Plaintiff had a reputation, he meant a reputation with women. This was the first time Arus Grambau had reviewed Petitioners file, saying this as he discovered it (as if a sunrise). Arus Grambau then proceeded to tell all of the female staff that Plaintiff has a lot of S.P.O.N.s in his file put on him by Women staff at other facilities (note: a Special Problem Offender Notice or S.P.O.N. is used to stop

inmates from being placed with certain staff, and prisoners). This was not true, if there is anything in Plaintiff's file it was put there illegally. Plaintiff has never had a misconduct, or N. O. I., or any other type of reprimand involving inappropriate, or predatory behavior toward women. This was said by the Arus to manipulate the psychology of staff, and create a hostile environment. Example: One day Plaintiff asked C/O Woods to call Rec. Worker Isabell, who told Plaintiff to have him contacted. When She had stepped away, Arus Grambau told C/O Woods in front of C/O Fink to be careful because Plaintiff has numerous S.P.O.N.s on women staff. When I returned to ask C/O Woods what Isabell said, C/O Fink became aggressive telling me to get away. I scene [sic] there was an issue, and went back and asked Fink what was up, Fink said he was told by Grambau that I have a lot of S.P.O.N.s in my file against women, and he wasn't about to let anything happen (while holding his taser). Fink Tasered a Prisoner a short time after that, with great fan fair by staff (i.e. I was in danger and now avoided that shift). Arus Grambau used this lie to create a dangerous environment for Plaintiff through his subordinates in retaliation for Plaintiff's active civil suit (Sango v. Dennis 1:12cv-00332-GJQ-ESC) and grievances on Arus Grambau and C/O Riggs, also hoping to humiliate Plaintiff for the same.

*Id.* at ¶ 6.

Based on these facts, plaintiff alleged that defendant Grambau retaliated against plaintiff "for his active civil action by making his Subordinates believe [p]laintiff is a threat to women, putting [p]laintiff in harms way (as male staff felt they rightfully need to protect female staff from wrongly accused [p]laintiff) and to humiliate [p]laintiff, as staff took their supervisor's word as true." *Id.* at ¶ 9. Plaintiff seeks injunctive and declaratory relief, as well as nominal, compensatory and punitive damages. *Id.* at ¶¶ 11-16. Finally, plaintiff signed a verification in which he certified "under penalty of perjury that the forgoing is true and correct." *Id.* at p. 5.

## II. Defendant's motion for summary judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

2

U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Here, plaintiff's § 1983 claim arises from an alleged retaliation in violation of the First Amendment.

Defendants seek summary judgment on this claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

    **B.**  **Plaintiff's Retaliation claim**

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

The gist of plaintiff's claim is that defendant retaliated against him by telling "all of the female staff" that plaintiff had a lot of SPONs placed on him by female staff members at other facilities. Defendant seeks summary judgment on the ground that plaintiff did not suffer an adverse action. In support of his motion, defendant has filed a copy of the MDOC SPONs related to plaintiff. *See* MDOC SPONs (May 9, 2012) (docket no. 16-2). The record includes four staff SPONs directed at plaintiff: Cheryl Watts of Macomb Correctional Facility (Nov. 6, 2008)

4

("Prisoner Sango has developed a fixation/infatuation on a few female staff members including RUO C. Watts (Henderson) and RUO M. Wright. For this reason he should not be housed in any facility where they work")[1]; Sandra Gallton of the West Shoreline Correctional Facility (July 10, 2009) ("Prisoner has developed a fixation/infatuation with RUM Gallton and A/ARUS Pipkins. For this reason he should not be housed at any facility where they work"); Tamika Pipkins of the Earnest C. Brooks Correctional Facility (July 10, 2009) ("Prisoner has developed a fixation/infatuation with A/ARUS Pipkins and RUM Gallton. For this reason he should not be housed at any facility where they work"); and Harold Gilkey of the Ionia Correctional Facility (May 8, 2012 ) ("Due to the parents of this prisoner went to high school with this employee and were friends"). *Id.* The record also includes eight SPONs involving other prisoners. *Id.*

The Court concludes that defendant's dissemination of information from MDOC SPONs is not an "adverse action" upon which plaintiff can base a First Amendment retaliation claim. A SPON "is used to document those situations where an offender is considered a threat to the safety of another offender or a Michigan Department of Corrections' employee, or a threat to the order or security of the facility." *Langford v. McKee*, No. 1:11-cv-5, 2011 WL 2728397 at *fn 2 (W.D. Mich. July 12, 2011), citing MDOC Policy Directive 03.03.110, ¶ E (effective 5/20/02). As a "Notice," some dissemination of a SPON is to be expected if it is to serve its purpose. The record reflects that plaintiff was issued SPONs after developing a "fixation/infatuation" with three or four female staff members which amounted to a threat to those staff members. In his affidavit, defendant acknowledged that he shared information from the female staff SPONs in the interest of prison

---

[1] The Court notes that while the SPON note for November 6, 2008 includes a reference to RUO Wright, there does not appear to be a separate SPON issued for her.

safety and that the information regarding the SPONs is located in his office and available to all employees at the correctional facility. Grambau Aff. at ¶¶ 4-6(docket no. 16-4).

In the context of prison retaliation cases, an "adverse action" is one that would "deter a person of ordinary firmness" from the exercise of the constitutional right at stake. *Thaddeus-X* at 396. Defendant's advice to other MDOC staff about plaintiff's SPONs is a matter of prison security and relevant (if not critical) to the management of plaintiff within the correctional facility. Contrary to plaintiff's allegations in his complaint, defendant did not "lie" about the fact that plaintiff had SPONs against female staff at other MDOC facilities. The SPONs in plaintiff's file speak for themselves. Defendant's advice to MDOC staff regarding the nature of plaintiff's SPONs cannot be construed as an adverse action which would deter plaintiff from exercising his First Amendment rights. Defendant is entitled to summary judgment.[2]

---

[2] Defendant's brief refers to plaintiff's attempt to bribe defendant after the lawsuit was filed:

> In November of 2012, Plaintiff handed ARUS Grambau a note stating that he would drop his claims against ARUS Grambau and another MDOC employee in an unrelated matter, if ARUS Grambau helped Plaintiff avoid a theft misconduct citation he incurred in an unrelated matter. ARUS Grambau alerted Oaks staff of Plaintiff's offer and Plaintiff was charged with Bribery of an Employee, a Class II Misconduct violation. After a hearing, he was found guilty. *See* Exhibit B, Misconduct Hearing Documents.

Defendant's Brief at pp. 1-2 (docket no. 16). Defendant's brief also cites case law which appears to respond to a retaliated claim arising from a "false misconduct violation" related to this bribery. *Id.* at p. 5. The Court does not find this claim alleged in the complaint. In fact, the complaint could not include this claim, because the misconduct report related to the bribery was issued on November 8, 2012, one week *after* plaintiff filed this action on November 1, 2012. *See* Misconduct Report (docket no. 16-3 at p. 3). Accordingly, the Court will not address defendant's argument related to retaliation arising from a "false misconduct violation."

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (docket no. 15) be **GRANTED** and that this action be **DISMISSED**.

Dated:  February 7, 2014	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).